UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARREN REED,

    Plaintiff,

v.

CITY OF WESTLAND, ET AL.,

    Defendants.

_____/

Case No. 14-13314

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [19]**

Plaintiff Darren Reed filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 against the City of Westland, Sergeant Daniel Serrano, and Officers James Starks and Brandon Paris. At this juncture, all that remains is a single Fourth Amendment claim against Officer Starks.[1] The genesis of that claim stems from an incident on May 7, 2013 when Plaintiff maintains that Starks, responding to a 911 call, used excessive force by deploying his taser to the back of Plaintiff's neck.

Currently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. 19). According to Officer Starks, his use of the taser was objectively reasonable in light of Plaintiff's aggressive demeanor and unwillingness to submit to arrest. For the reasons stated more fully below, the Court finds that there are factual disputes bearing on the reasonableness of Starks' conduct that

---

[1] Plaintiff has agreed to dismiss all claims against Defendants Paris, Serrano, and the City of Westland. (Plf.'s Br. 9). Additionally, the Court previously dismissed Plaintiff's state law claims without prejudice to avoid juror confusion. (Dkt. 3).

preclude the entry of summary judgment. Accordingly, the Court DENIES Defendants' motion. (Dkt. 19). Pursuant to Plaintiff's stipulation, all remaining Defendants and claims are hereby dismissed.

I. **Factual Background**

On May 7, 2013, Plaintiff and his then girlfriend, Claudia Haddad ("Haddad"), were vigorously debating whether a song on the radio was specifically produced for a movie score. (Defs.' Br. Ex. 3, July 24, 2015 Deposition of Claudia Haddad, 9-10). One thing led to another and, in the end, Plaintiff "broke the knob and cracked the screen" on Haddad's car radio. (Defs.' Br. Ex. 7, April 22, 2015 Deposition of Darren Reed, 49). Shortly thereafter, Haddad dropped Plaintiff off at his parents' house–where they both resided–to "let him cool down for a little bit" while she ran to the gas station. (Haddad Dep. 11). Plaintiff stormed in the house and encountered his mother, Dana Reed ("Mrs. Reed"), who was concerned about the condition of his hand. (*Id.* at 51-52). Apparently in no mood for consoling, Plaintiff threatened to "punch [Mrs. Reed's] teeth down [her] throat" if she didn't leave him alone. (Defs.' Br. Ex. 14, July 30, 2015 Deposition of Dana Reed, 39).

Plaintiff's volatile behavior continued to escalate following the confrontation with his mother. Indeed, according to Haddad, shortly after dropping Plaintiff off, she received a call from his sister, Marissa Reed ("Marissa"), who informed her that he was in the process of burning Haddad's clothes. (Haddad Dep. 11). Sure enough, after speeding back to the house, Haddad discovered that "the fire pit [in the backyard] was smoking, and [she saw] him tossing in [her] favorite clothes." (*Id.*). After screaming at Plaintiff and allegedly punching him in the mouth, Haddad attracted the attention of Mrs. Reed, who attempted to de-escalate the situation. (*Id.* at 15). Despite her best efforts, Mrs. Reed seemingly only

incited Plaintiff further, which inspired her decision to contact the Westland Police Department.

Within minutes, Officers Starks, Paris, and Sergeant Serrano arrived at the scene in separate cars. (Defs.' Reply Ex. 15, November 3, 2015 Deposition of Officer Starks, 13). Starks was the first to exit his vehicle and began to approach the gated driveway. (Starks Dep.14-15). Plaintiff, standing near Haddad in the backyard, walked towards the gate to receive Starks. (Pltf.'s Dep. 59-60). The next 30-40 seconds, which forms the primary basis of Plaintiff's complaint, are hotly debated. Based on the limited audio captured by Officer Starks' microphone, the following can be discerned:

> 16:00:**04-07**: The gate blocking the driveway is pushed;
> 16:00:**08**: Plaintiff and several others instruct Starks to "close the gate";
> 16:00:**09**: Starks: "excuse me";
> 16:00:**10-16**: Plaintiff: "it's not your property, close the gate";
> 16:00:**17-19**: Starks: "are you the boyfriend?";
> 16:00:**20-21**: Plaintiff: "are you the sheriff?";
> 16:00:**22-28**: Starks: "come here, get down on the ground mother fucker, get down on the ground";
> 16:00:**29-35**: Struggle between Plaintiff and Starks ensues; Plaintiff is tased.

(Defs.' Br. Ex. 11, Audio Feed from Officer Starks Mic.).

Officer Starks and Plaintiff's account of the moments immediately preceding the struggle are the subject of considerable disagreement. According to the report authored by Starks, he:

> opened the gate, drew his taser and ordered Darren Reed to get on the ground. Darren Reed began backing away . . . at which time [Starks] advanced on him . . . . As [Starks] advanced on Reed, Reed was observed making targeting glances to possible escape routes. [Starks] took hold of Reed by the left forearm, at which time Reed pulled away and began to take a fighting stance while [Starks] was simultaneously trying to push/spin him to the ground. [Starks] discharged the taser [] at point blank range, striking Reed in back of the neck with both probes.

(Defs.' Br. Ex. 6, Police Report). Plaintiff, on the other hand, maintains that Starks:

> was opening the gate . . . and I was just like whoa, whoa, let me make sure the dogs are put away because we have rottweilers . . . . [Starks] like chuckles to himself and . . . kicked the gate open. At that time I just turned around and put my hands up. I thought . . . I'm going to be detained, . . . . I just put my hands up. The next thing I remember my head [is] getting pushed down, my dad saying don't fucking taser him, and I hit the ground.

(Plaintiff Dep. 59-62). There were at least five eyewitnesses to the altercation between Officer Starks and Plaintiff: Scott Reed ("Mr. Reed") Plaintiff's father, Breanne Reed ("Breanne") Plaintiff's sister, Mrs. Reed, Haddad, and Officer Serrano.[2] The testimony of Mr. and Mrs. Reed and Breanne is essentially the same and largely corroborates Plaintiff's version of events. According to Mr. Reed, for example, Plaintiff "turned around facing the garage, his back to Starks, put both hands in the air and when he did that Starks came up in a rage . . . shoved his taser in the back of my son's neck . . . [and he] fell face first on the ground." (Defs.' Br. Ex. 13, July 30, 2015 Deposition of Scott Reed, 63-64). Officer Serrano, for his part, maintains that while he was not in position to observe the actual tasing, Plaintiff did not "make any sort of threatening movement or any physical swing . . . at Starks prior to the taser being deployed". (Defs.' Br. Ex. 5, August 17, 2015 Deposition of Sargent Daniel Serrano, 16-17).

Shortly after Plaintiff was arrested, EMS arrived to remove the probes from his neck. From there, he was transported to the Westland Police station where he was booked and processed without incident. Ultimately, Plaintiff was charged with malicious destruction of property and domestic violence.

---

[2] Officer Paris, who was also at the scene, maintains that he "did not observe the actual taser being deployed." (Defs.' Br. Ex. 12, August 26, 2015 Deposition of Officer Brandon Paris, 13).

4

**II. Standard of Review**

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

**III. Analysis**

Plaintiff asserts that Officer Starks violated his Fourth Amendment right to be free from excessive force by tasing him while his back was turned. Officer Starks argues that he is entitled to qualified immunity on the grounds that his decision to tase Plaintiff was objectively reasonable under the circumstances. Here, even with the benefit of the audio recording, the Court finds that questions of material fact remain regarding the propriety of Starks' conduct.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). On summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party; Plaintiff in this case. Viewing the facts in that light, the Court must then determine "whether: 1) the violation of a constitutional right has occurred; and 2) the constitutional right at issue 'was clearly established at the time of defendant's alleged misconduct.' " *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), and citing *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004)). While the Supreme Court has been clear that these two prongs need not be considered sequentially, *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009), this Court, similar to the Sixth Circuit in *Grawey*, will first examine whether Plaintiff has presented evidence of a constitutional violation. *Grawey*, 567 F.3d at 309.

### A. Excessive Force under the Fourth Amendment

"Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . ." *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Under the Fourth Amendment, the Sixth Circuit applies an "objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Burgess v. Fischer*, 735 F.3d 462, 472

6

(6th Cir. 2013). In so doing, the court considers three factors: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Martin v. City of Broadview Heights*, 712 F .3d 951, 958 (6th Cir. 2013) (quotations omitted). "These factors are assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight." *Id.* (citing *Graham*, 490 U.S. at 396–97).

Whether Officer Starks violated Plaintiff's right to be free from excessive force by deploying his taser depends upon whose version of the facts one accepts. According to Starks, based on Plaintiff's body language and refusal to obey his verbal commands, "I'm thinking he's going to flee, he's going to fight, one of the two." (Defs.' Reply Ex. 15, November 3, 2015 Deposition of Officer James Starks, 18). At that point, Starks decided, "to drive stun him because I've already got the taser out, everything is in motion. Rather than the drive stun trigger, I [inadvertently] hit the probe trigger." (*Id.* at 19). Unfortunately for Starks, however, while neither of the other Officer Defendants actually witnessed him deploy the taser, their accounts don't necessarily lend support for his position. Indeed, according to Sargent Serrano, Plaintiff was facing away from Starks at the time he was tased. (Serrano Dep. 16). Moreover, Serrano never observed Plaintiff "make any sort of threatening movement or any physical swing" at Starks prior to the taser being deployed. (*Id.*)

Arguably of even greater significance at this stage, however, is the fact that Starks' testimony is directly contradicted by at least three individuals who claim to have witnessed

7

the entire incident. As discussed, Plaintiff's father, mother, and sister all testified that his hands were up and his back was turned as Starks approached. *See* (Scott Reed Dep. 76-77) ("Darren's back to him, hands in the air, there was never enough time for Darren to get on the ground."); (Dana Reed Dep. 52) ("When [Starks] enter[e]d the yard Darren turned around, put his hands up."); (Plf.'s Resp. Ex. E, July 30, 2012 Deposition of Breanne Reed, 20-21) ("[w]hen my brother seen the gate come open [he] turned facing the garage with his back to the officer, hands in the air, . . . ."). As the court pointed out in *Lucier v. City of Ecorse*, 12-CV-12110, 2014 WL 1260651, at *12 (E.D. Mich. Mar. 27, 2014) aff'd, 601 F. App'x 372 (6th Cir. 2015), a case not unlike this one, although Plaintiff's version of the facts is contradicted by the "testimony of the arresting officer", his account is not " 'blatantly contradicted' or 'utterly discredited by the record,' such that 'no reasonable juror' would believe [his] version of the facts." (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007). In fact, the plaintiff in *Lucier* pled guilty to resisting arrest. *Id.* Nonetheless, the court held that "[v]iewing the facts in the light most favorable to the Plaintiff, the use of a taser on a subject who was standing behind his drum set, *not moving in any direction and not attempting to flee* was unconstitutional." *Id.* (emphasis added). Viewing the evidence in the light most favorable to Plaintiff, the eyewitness testimony creates "factual disputes that are material to the reasonableness inquiry that preclude summary judgment for [Starks]- specifically, whether [Plaintiff] posed a threat or actively resisted arrest." *Burgess,* 735 F.3d at 474.

Nor does Plaintiff's reliance on *Wylie v. Overby*, 05-CV-71945, 2006 WL 1007643 (E.D. Mich. April 14, 2006) suggest that the result should be any different. There, the plaintiff, after pleading guilty to resisting arrest and assaulting the officers, filed a § 1983 action alleging excessive force. As the court aptly reasoned, "[p]laintiff's guilty plea

preclude[d] him from [] denying the facts underlying the plea-i.e. that [p]laintiff, in fact, assaulted the officer(s) and resisted arrest-for purposes of his § 1983 excessive-force claim. To allow [p]laintiff to now argue facts to the contrary, i.e., that he did not commit an assault or try to resist his arrest, would violate the principles of *Heck*." *Id.* at *6. In this way, the plaintiff's assaultive acts were "important factors that locate[d] [the officers] use of the Taser well within the realm of reasonable use of force." *Id.* at *8. Here, by contrast, there is no contention that Plaintiff's guilty plea was related to the circumstances precipitating Officer Starks' use of force. Indeed, according to Defendants, Plaintiff's guilty plea was strictly limited to domestic violence and resulted in a sentence of probation. Accordingly, the *Heck* doctrine has no application and *Wylie* is distinguishable on these grounds.

In sum, then, Officer Starks is asking this Court to weigh his credibility over that of Plaintiff and the eyewitnesses. This the Court cannot, and will not, do. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

### B. Clearly Established Constitutional Right

As of May 7, 2013, the date of Plaintiff's arrest, it was "clearly established in the Sixth Circuit that the use of a taser on a non-resistant person who poses no threat of escape or of causing immediate harm violated clearly established law." *Lucier*, 2014 WL 1260651 at *9 (citing *Bennett v. Krakowski*, 671 F.3d 553, 561 (6th Cir. 2011) (" '[A]bsent some compelling justification-such as the potential escape of a dangerous criminal or the threat of immediate harm-the use of [a stun gun] on a non-resistant person is unreasonable' "). Indeed, the Sixth Circuit has recognized that:

9

> [c]ases addressing qualified immunity for taser use fall into two groups. The first involves plaintiffs tased while actively resisting arrest by physically struggling with, threatening, or disobeying officers. In the face of such resistance, courts conclude either that no constitutional violation occurred, or that the right not to be tased while resisting arrest was not clearly established at the time of the incident.
>
> . . . .
>
> In the second group of cases, a law-enforcement official tases a plaintiff who has done nothing to resist arrest or is already detained. Courts faced with this scenario hold that a § 1983 excessive-force claim is available, since "the right to be free from physical force when one is not resisting the police is a clearly established right.

*Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495–96 (6th Cir. 2012). Because there is a question of material fact regarding the reasonableness of Officer Starks' conduct, there is no doubt that this case fits within the second category identified in *Cockrell*. Moreover, Defendants acknowledge that "the right of an individual . . . who ha[s] neither fled nor resisted, to be free from the application of a stun gun is clearly established." (Def.'s Br. 10). Accordingly, the Court find that "[a]bsent some compelling justification–such as the potential escape of a dangerous criminal or the threat of immediate harm–the use of a [taser] on a non-resistant person is unreasonable." *Kijowski v. City of Niles,* 372 F. App'x 595, 600 (6th Cir. 2010).

## IV.  Conclusion

For the reasons thus stated, the Court DENIES Defendants' motion for summary judgment. (Dkt. 19).

SO ORDERED.

       s/Nancy G. Edmunds
       Nancy G. Edmunds

       United States District Judge

Dated:  December 30, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 30, 2015, by electronic and/or ordinary mail.

       s/Carol J. Bethel
       Case Manager